UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

     - against -

MELVIN VARGAS,
                 Defendant.

------------------------------------X

11 Cr. 240-01 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

       On October 27, 2011, Melvin Vargas ("Vargas" or "Defendant") pleaded guilty to one count of conspiracy to commit bank fraud, in violation of 18 U.S.C § 1349, one count of bank fraud, in violation of 18 U.S.C § 1344, one count of conspiracy to commit money laundering, in violation of 18 U.S.C § 1956(h), and one count of money laundering, in violation of 18 U.S.C § 1956(a)(1)(B)(i).  For the reasons set forth below, Vargas will be sentenced to time served to be followed by 3 years' supervised release, with the special condition that 1 year of his release shall be served in home confinement.  Defendant will be ordered to pay restitution to Citibank in the sum of $100,000 and will be required to pay a special assessment of $400.

**Prior Proceedings**

On March 16, 2011, Indictment 11 CR 240 (RWS) was filed in the Southern District of New York.

Count 1 charges that, in violation of 18 U.S.C. § 1349, in July and August 2008, in the Southern District of New York and elsewhere, Vargas, "Melvin A. Vargas-Pena," a/k/a "Melvin Vargas-Pena," a/k/a "Melvin Vargas Pena," and others conspired to execute and attempt to execute a scheme and artifice to defraud Citibank, NA ("Citibank"), and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations, and promises, in violation 18 U.S.C. § 1344.

Count 2 charges that in August 2008, in the Southern District of New York and elsewhere, Vargas, "Melvin A. Vargas-Pena," a/k/a "Melvin Vargas-Pena," a/k/a "Melvin Vargas Pena," attempted to execute and executed a scheme to obtain through fraud money in a Citibank account, in violation of 18 U.S.C. § 1344.

Count 3 charges that in August 2008, in the Southern District of New York and elsewhere, Vargas, "Melvin A. Vargas-Pena," a/k/a "Melvin Vargas-Pena," a/k/a "Melvin Vargas Pena," and others conspired to conduct a financial transaction which in fact involved the proceeds of specific unlawful activity, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of 18 U.S.C. § 1956(h).

Count 4 charges that in August 2008, in the Southern District of New York and elsewhere, Vargas, "Melvin A. Vargas-Pena," a/k/a "Melvin Vargas-Pena," a/k/a "Melvin Vargas Pena," caused a bank to use bank fraud proceeds to issue a $40,000 check that was made payable to a co-conspirator not named herein ("CC-2"), in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

Count 5 charges that in August 2008, in the Southern District of New York and elsewhere, Vargas, "Melvin A. Vargas-Pena," a/k/a "Melvin Vargas-Pena," a/k/a "Melvin Vargas Pena," and others conspired to transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in 18

3

U.S.C. § 1028A(c), in violation of 18 U.S.C. § 371.

Count 6 charges that in August 2008, in the Southern District of New York and elsewhere, Vargas, "Melvin A. Vargas-Pena," a/k/a "Melvin Vargas-Pena," a/k/a "Melvin Vargas Pena," transferred, possessed, and used the name and account number of a Citibank account holder during and in relation to the commission of the conspiracy to commit bank fraud and bank fraud violations charged in Counts 1 and 2 of the Indictment, in violation of 18 U.S.C. § 1028A.

On October 27, 2011, Vargas appeared before the Honorable Theodore H. Katz in the Southern District of New York and allocuted to Counts 1 through 4 in accordance with a plea agreement which stipulates the following:

Offense Level

- Pursuant to U.S.S.G. § 3D1.2(d), the applicable base offense level for the bank fraud and money laundering counts, as well as the bank fraud and money laundering conspiracy counts, are grouped together, and, pursuant to U.S.S.G. § 3D1.3(b), the offense guideline that produces the highest offense level is used.

4

Grouping Analysis

- Pursuant to U.S.S.G. § 2B1.1, the bank fraud count has a base offense level of 7.

- Because the loss amount is more than $70,000 but not more than $120,000, an 8 point increase in the offense level is warranted. Accordingly, the offense level for bank fraud is 15.

- Pursuant to U.S.S.G. § 2X1.1(b)(2), the offense level for the substantive count of bank fraud and the bank fraud conspiracy are the same, because the substantive offense was completed. Accordingly, the offense level for bank fraud conspiracy is 4. Pursuant to U.S.S.G. § 2S1.1, the base offense level for the substantive count of money laundering and the money laundering conspiracy are the same as the offense level for bank fraud, the underlying offense: 15. A 2 point increase is called for, pursuant to U.S.S.G. § 2S1.1(b)(2)(B), because Vargas will have been convicted under 18 U.S.C. § 1956. Accordingly, the offense level for the money laundering counts is 17.   Therefore, the offense level for the grouped counts is 17.

- Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government,

through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, an additional one-level reduction is warranted, pursuant to U.S.S.G. § 3E1.1 (b), because the defendant will have given timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

- In accordance with the above, the applicable Guidelines offense level is 14.

Criminal History Category

- Based upon the information available to the U.S. Attorney's Office (including representations by the defense), the defendant has one criminal history point. Accordingly, the defendant's Criminal History Category is I.

Sentencing Range

- Based upon the calculations set forth above, the defendant's stipulated Guidelines range is 15 to 21 months (the "Stipulated Guidelines Range"). In addition, after determining the defendant's ability to pay, the Court may

6

impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 14, the applicable fine range is $4,000 to $1,000,000.

- The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party suggest that the Probation Office consider such a departure or adjustment under the Guidelines, or suggest that the Court consider any such departure or adjustment.

- The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range, suggest that the Probation Office consider a sentence outside of the Stipulated Guidelines Range, and suggest that the Court consider a sentence outside of the Stipulated Guidelines Range, based upon the factors to be considered in imposing a sentence pursuant to 18 U.S.C. § 3553(a).

Vargas' sentencing is currently scheduled for February 6, 2012.

7

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed —

   (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B)  to afford adequate deterrence to criminal conduct;

   (C)  to protect the public from further crimes of the defendant; and

   (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

(4)  the kinds of sentence and the sentencing range established for —

   (A)  the applicable category of offense committed

8

> by the applicable category of defendant as
> set forth in the guidelines . . .;

(5) any pertinent policy statement . . . [issued
by the Sentencing Commission];

(6) the need to avoid unwarranted sentence
disparities among defendants with similar
records who have been found guilty of
similar conduct; and

(7) the need to provide restitution to any victims of
the offense.

18 U.S.C. § 3553(a).  A sentencing judge is permitted to find

all the facts appropriate for determining a sentence, whether

that sentence is a so-called Guidelines sentence or not.  See

Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the

Presentence Investigation Report ("PSR") with respect to

the Defendant's personal and family history.

**The Offense Conduct**

The following description draws from the PSR.  The

specific facts of the underlying conduct are adopted as set

forth in that report, which contains information based on a criminal complaint prepared by a Special Agent with the Federal Bureau of Investigation ("FBI").

As part of this investigation, the case agent spoke with a cooperating witness ("CW"), who previously worked at a Citibank branch located in New York, New York. The CW advised that in the summer of 2008, Vargas approached CW about CW arranging to have a check issued fraudulently from a Citibank account to a company controlled by Vargas. Vargas instructed CW to have the check issued from an inactive account which had a significant balance and to make the check payable to Triboro Satellite LLC.

In August 2008, in New York, New York, CW forged the name of a deceased Citibank account holder and thereby caused Citibank to issue an official Citibank check in the amount of $100,000 (the "Check") to Triboro Satellite LLC. In August 2008, CW delivered the Check by hand to Vargas in New York, New York. In August 2008, Vargas provided CW with $10,000 in cash as partial payment of CW's half of the Check proceeds.

In August 2008, Vargas provided to CW and another co-

10

conspirator not named herein ("CC-1") a $40,000 check as payment of the remainder of CW's half of the Check proceeds. Based on review of records maintained by Citibank and conversations with a Citibank representative, the agent learned that on August 15, 2008, a $100,000 official Citibank check was issued in New York, New York to Triboro Satellite LLC, and the $100,000 were drawn from an individual's ("Victim-1") Citibank account.

At that time, Triboro Satellite LLC had a Citibank account, for which there was an address of record ("Address-1"). Based on review of documents relating to an application submitted on March 6, 2006 by Vargas to be an officer with the New York City Police Department, the agent learned the address Vargas identified as his home address was Address-1.

Based on review of records maintained by the Public Administrator of the County of New York, the agent learned that Victim-1 was deceased, and that she died on March 21, 2008. Based on a representation by the Public Administrator of the County of New York, it was also learned that the estate of Victim-1 did not authorize the withdrawal of $100,000 from Victim-1's account on August 15, 2008.

11

Based on review of records maintained by Commerce Bank
and conversations with a representative of Commerce Bank, the
agent learned that a check in the amount of $100,000, for which
the payor was Victim-1, was deposited on August 16, 2008 into a
Commerce Bank account held by Triboro Satellite LLC.    The
primary address for the account held by Triboro Satellite LLC
was Address-1.   The account opening information for the account
held by Triboro Satellite LLC stated that "Melvin Vargas-Pena"
is the president of Triboro Satellite LLC and listed "Melvin
Vargas-Pena" as one of two authorized signatories for the
account.

On August 20, 2008, $10,000 was withdrawn from the
account held by Triboro Satellite LLC, and the withdrawal slip
listed a driver's license number ("Driver's License Number-1")
as identifying information for the person authorizing the
withdrawal.

On August 21, 2008, $90,000 was withdrawn from the
account held by Triboro Satellite LLC for the purchase of two
official bank checks, and the withdrawal slip listed Driver's
License Number-1 as identifying information for the person
authorizing the withdrawal.   One of the official bank checks was

12

made payable to "Melvin Vargas Pena" in the amount of $50,000. The other official bank check was made payable to CC-1 in the amount of $40,000.

During the investigation, the agent also learned that Driver's License Number-1 was the license number for "Melvin A. Vargas-Pena," and the address on Driver's License Number-1 is Address-1.

Based on the foregoing, a criminal complaint was subsequently filed on February 7, 2011 and Vargas was arrested on February 16, 2011.

**The Relevant Statutory Provisions**

For Counts 1 and 2, pursuant to 18 U.S.C. §§ 1344 & 1349, the maximum term of imprisonment is 30 years.  For Counts 3 and 4, pursuant to 18 U.S.C. §§ 1956(h) & 1956(a)(1)(B)(i), the maximum term of imprisonment is 20 years.

For Counts 1 and 2, if a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than 5 years, pursuant to 18 U.S.C. § 3583(b)(1).  For

13

Counts 3 and 4, if a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than 3 years, pursuant to 18 U.S.C. § 3583(b)(2).  Such terms of supervised release run concurrently, pursuant to 18 U.S.C. § 3624(e).

For Counts 1 and 2, the Defendant is not eligible for probation because the instant offenses are Class B felonies, pursuant to 18 U.S.C. § 3561(a)(1).  For Counts 3 and 4, the Defendant is not eligible for probation because he is being sentenced at the same time to a term of imprisonment on a different count or case, pursuant to 18 U.S.C. § 3561(a)(3).

For Counts 1 and 2, the maximum fine that may be imposed is $1,000,000 per count, pursuant to 18 U.S.C. §§ 1344 & 1349.  For Counts 3 and 4, the maximum fine that may be imposed is $500,000 per count, pursuant to 18 U.S.C. § 1956.  A special assessment of $100 per count is mandatory, for a total of $400, pursuant to 18 U.S.C. § 3013.

Full restitution to the victim is required under 18 U.S.C. § 3663A & 3664.

14

**The Guidelines**

The November 1, 2011 edition of the United States
Sentencing Commission Guidelines Manual has been used in this
case for calculation purposes, pursuant to § 1B1.11(a). The
Court finds the following with respect to Defendant's applicable
offense level, criminal history, recognition of responsibility,
and term of imprisonment:

Pursuant to Guideline §3D1.2(d), the applicable base
offense level for the bank fraud (Count 2) and money laundering
(Count 4) counts, as well as the bank fraud and money laundering
conspiracy counts (Counts 1 and 3), are grouped together.
Pursuant to § 3D1.3(b), the offense guideline that produces the
highest offense level is used.

The Guideline for a violation of 18 U.S.C. § 1956 is
found in § 2S1.1(a)(1), which provides that the base offense
level is the offense level for the underlying offense from which
the funds were derived because (A), the defendant committed the
underlying offense, and (B) the offense level for that offense
can be determined. Pursuant to § 2B1.1, the bank fraud count
has a base offense level of 7. Because the loss amount is more

15

than $70,000, but not more than $120,000, an 8 point increase in the offense level is warranted and the base offense level is 15.

Because Vargas has been convicted under 18 U.S.C. § 1956, a two-level increase is warranted, pursuant to § 2S1.1(b)(2)(B).

Based on his plea allocution, the Defendant has shown recognition of his responsibility for the offense.  Pursuant to § 3E1.1(a), the offense is reduced two levels.  Furthermore, an additional one-level reduction is warranted, pursuant to § 3E1.1(b), because Defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

Accordingly, the applicable offense level is 14.

On May 9, 2003, Vargas was arrested and charged with petit larceny in the Kings County Criminal Court.  On January 8, 2004, Defendant was sentenced to 3 years' probation.  Pursuant to § 4A1.1(c), this conviction warrants one criminal history point.

A total of one criminal history points establishes a Criminal History Category of I, pursuant to the table at Chapter 5, Part A, of the Guidelines.

Based on a total offense level of 14 and a Criminal History Category of I, the Guidelines range for imprisonment is 15 to 21 months.

For Counts 1 and 2, the Guidelines range for a term of supervised release is at least two years but not more than five years, pursuant to § 5D1.2(a)(1).   For Counts 3 and 4, the Guidelines range for a term of supervised release is at least one year but not more than three years, pursuant to § 5D1.2(a)(2).

For Counts 1 and 2, the Defendant is not eligible for probation because the instant offenses are Cass B felonies, pursuant to § 5B1.1(b)(1).   For Counts 3 and 4, the Defendant is not eligible for probation because he is being sentenced at the same time to a term of imprisonment on a different count or case, pursuant to § 5B1.1(b)(3).

17

The fine range for the instant offense is from $4,000 to $1 million, pursuant to § 5E1.2(c)(3)(A) and (c)(4). Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,357.01 to be used for imprisonment, a monthly cost of $328.20 for supervision, and a monthly cost of $2,153.22 for community confinement.

Pursuant to § 5E1.1(a)(1), in case of an identifiable victim, the Court shall enter a restitution order for the full amount of the victim's loss if such order is authorized under 18 U.S.C. § 3663A.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's

18

decision in <u>Crosby</u>, 397 F.3d 103.

Under Section 3553(a), the Court considers "the nature
and circumstances of the offense and the history and
characteristics of the defendant" as well as the need for the
sentence imposed "to reflect the seriousness of the offense,
promote respect for the law, . . . to provide just punishment
for the offense," "to afford adequate deterrence to criminal
conduct," and "the need to provide restitution to any victims of
the offense." From the PSR, it appears that Vargas played a
relatively minor role in the instant offenses and appears to
have become involved due to his relationship to CW, his sister
in law. Additionally, Vargas profited minimally from his crimes
relative to his co-conspirators.

In light of the Court's statutory responsibility "to
'impose a sentence sufficient, but not greater than necessary'
to accomplish the goals of sentencing," <u>Kimbrough v. United
States</u>, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)),
and having considered the Guidelines and all of the factors set
forth in § 3553(a), it is concluded that a downward departure
from the Guidelines sentence is warranted, particularly one
which will permit the Defendant to more swiftly provide

19

restitution to the victims of the offense.

**The Sentence**

For the instant offenses, Vargas will be sentenced to
time served and 3 years' supervised release with the special
condition that one year of that release shall be served in home
confinement.   The Defendant shall be permitted to work during
the period of home confinement.

Vargas is directed to report to the nearest United
States Probation Office within seventy-two hours of release to
commence his term of supervised release.   It is recommended that
Defendant be supervised by the district of his residence.

As mandatory conditions of his supervised release, the
Defendant shall:   (1) not commit another federal, state, or
local crime; (2) not illegally possess a controlled substance;
and (3) not possess a firearm or destructive device.   The
mandatory drug testing condition is suspended based on the
Court's determination that the Defendant poses a low risk of
future substance abuse.

20

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1)  Defendant shall provide the probation officer with access to any requested financial information.

(2)  Defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless Defendant is in compliance with the installment payment schedule.

(3)  Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found.  The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

In consideration of all the factors set forth in 18

21

U.S.C. § 3572(a), it does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived.

As a result of committing the offense alleged in Counts 1 and 2, Defendant shall forfeit to the United States, pursuant to 21 U.S.C. § 853, including but not limited to, any and all property constituting or derived from any proceeds obtained directly or indirectly as a result of the said violations and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violations alleged in Counts 1 and 3.

Restitution in the amount of $100,000 is owed to Citibank. Vargas is ordered to make restitution payable to the Clerk, U.S. District Court for disbursement to:

> Citibank
> 1 Court Square, 16th Floor
> Long Island City, NY 11120
> Attn: Kathy French-Saracco

If Defendant is engaged in a BOP non-UNICOR program, he shall pay $25 per quarter toward the criminal financial penalties. However, if the Defendant participates in the BOP's UNICOR program as a grade 1 through 4, he shall pay 50% of his monthly UNICOR earnings toward the criminal financial penalties,

22

consistent with BOP regulations at 28 C.F.R. § 545.11. The restitution shall be paid in monthly installments of 10% of gross monthly income over a period of supervision to commence 30 days after the Defendant's release from custody.

A special assessment of $400, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for February 6, 2012.

It is so ordered.

New York, NY
February    /    , 2012

ROBERT W. SWEET
U.S.D.J.

23